881 So.2d 1157 (2004)
April MURPHY, Appellant,
v.
Martha C. HURST, M.D., et al, Appellee.
No. 5D02-3047.
District Court of Appeal of Florida, Fifth District.
August 6, 2004.
Rehearing Denied September 20, 2004.
*1158 James C. Blecke of Deutsch & Blumberg, P.A., Miami, and Brasfield, Fuller, Freeman, Lovell & O'Hern, Pa., St. Petersburg, for Appellant.
Richard S. Womble, David R. Kuhn of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellees, Martha C. Hurst, M.D., and Orlando Health Care Group.
Thomas E. Dukes, III, G. Franklin Bishop, III, and Michelle M. Perez-Sotolongo of McEwan, Martinez & Dukes, P.A., Orlando, for Appellees, Richard S. Tejedor, M.D. & Central Florida Pulmonary Group, P.A.
THOMPSON, J.
April Murphy appeals a judgment for the defendants in a medical malpractice case. Murphy contends that she is entitled to a new trial because the court denied her mid-trial motion to strike a juror, who, it was learned mid-trial, may have been treated five or ten years earlier for what may have been asthma by a doctor associated with one of the defendant medical groups. We affirm.
Murphy sued two medical groups and two doctors, alleging that she had been misdiagnosed as having asthma and that she was injured by inappropriate doses of steroids over an extended period. Although only two doctors were named as defendants, several doctors from the two medical groups treated Murphy and were introduced during voir dire. The court asked the venire if they were acquainted with any of the doctors, and Juror Moore apparently did not raise her hand. Later, counsel asked the venire if any of them had ever had asthma. Juror Moore apparently did not raise her hand. After discussions with venire persons who responded affirmatively to the question, counsel asked: "Has anyone else had any problems associated with asthma," and Juror Moore apparently did not respond.
Apparently, Doctor Decker, who was associated with Central Florida Pulmonary Group, thought he recognized Juror Moore, and the group verified through its records that Moore had been its patient. Later, as the proceedings were about to begin, defense counsel suggested to the court that Juror Moore should be questioned. The following transpired after Juror Moore was brought to the courtroom:

*1159 THE COURT: Good morning, Ms. Moore, you may be seated. Ms. Moore, it has come to my attention that at some time several years ago, four or five years ago, you may have been treated yourself by someone at the Central Florida Pulmonary Group. Is that true?
JUROR MOORE: Uh-huh.
THE COURT: Did you forget about that during the voir dire?
JUROR MOORE: Yeah, since I haven't had any more.
THE COURT: Do you remember what doctor treated you?
JUROR MOORE: I think Arado (ph).[1]
THE COURT: And as a result of that treatment did you get better?
JUROR MOORE: Uh-huh.
THE COURT: And the reason that didn't come out during the examination when people asked whether or not any of you had suffered from asthma?
JUROR MOORE: Well, I just totally forgot about it since I haven't had it any more. But he did tell me that it would come and go. He said it might go away and it might come back and that's why he had gave me the inhaler, he said always have one with you. But I have one at work in the locker and one in my purse but I never had to use it since.
THE COURT: Okay. Counsel, approach the bench, please.
(A bench conference was had on the record.)
MR. DUKES [Defense counsel]: I would like to ask her a couple of follow-up questions if that's okay.
THE COURT: Like what?
MR. DUKES [Defense counsel]: I think she saw Dr. Decker, does she remember seeing him and like what was her asthma like.
THE COURT: Did you see any other doctors at the Central Florida Pulmonary Group?
JUROR MOORE: No.
MR. LOVELL [Plaintiff's counsel]: She might not know it was Dr. Decker.
MR. DUKES [Defense counsel]: Did she ever have a sleep study done?
THE COURT: Did you ever have a sleep study done?
JUROR MOORE: No.
MR. DUKES [Defense counsel]: I would like her to describe her asthma, what made her go see the doctors in the first place.
THE COURT: And do you remember what your asthma symptoms were that caused you to go to the doctor in the first place?
JUROR MOORE: I had bronchitis.
THE COURT: Bronchitis.
JUROR MOORE: That's what he said it was, a bronchitis. I told him I never had asthma before, he said it's just something that happens.
THE COURT: All right.
MR. DUKES: Does she remember  I mean does she remember a coughing, chest type wheezing, any of those things?
THE COURT: Any other symptoms?
JUROR MOORE: No.
MR. DUKES [Defense counsel]: Thank you.
THE COURT: All right. We'll let you go back out and let the whole jury come back in. Thank you.
Murphy's counsel did not question Moore. Defense counsel said that he *1160 would strike Juror Moore at the next break. The court responded that if the defense wanted to make a motion, it would have to be at once. At that, defense counsel for each of the two medical groups and defendant physicians announced that there was no objection to Juror Moore.
Later, after the jury was brought into the courtroom, Murphy's counsel approached the bench and the following ensued:
MR. LOVELL [Plaintiff's counsel]: I discussed the matter with co-counsel about the juror staying on the jury and we both came to the conclusion that it was fine. I neglected to conference with my client about that and she is upset with the woman staying on the jury and wants the woman removed from the jury so I don't think I have any alternative but to make a motion to remove her.
THE COURT: Does anyone want to be heard?
MR. DUKES [Defense counsel]: I don't think that it constitutes cause because I mean it was ten years ago, she forgot about it, her memory was refreshed. It seemed to be a trivial event, frankly. I even asked if she would describe it and it was bronchitis which is a different animal. There's nothing about what came out this morning that's going to influence this woman and I just don't think she needs to be removed. There's nothing here in my mind that constitutes deception. I think she genuinely forgot and there's nothing about that series of incidents that would make me feel that she tried to 
THE COURT: That's my impression as well so I'm going to deny the challenge for cause.
Murphy asserts that her right to make an informed decision about challenging for cause or peremptorily was violated by the failure of Juror Moore to disclose "her history of treatment for asthma and especially her treatment with the defendant, Central Florida Pulmonary Group." Murphy argues that the court should have removed Juror Moore from the jury and replaced her with the alternate juror and that she is entitled to a new trial because the court refused to do so. In De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995), the supreme court approved a three-part test to be used in determining whether a juror's failure to disclose warrants a new trial. To be entitled to relief, the complaining party must show that: (1) the information is relevant and material to jury service in the case; (2) the juror concealed the information during questioning; and (3) the failure to disclose the information was not attributable to the complaining party. Id. In the instant case, the trial court ruled that what Juror Moore failed to disclose was not material, but rather was remote and trivial. The court pointed out that all of the attorneys were very experienced counsel, and concluded that Juror Moore's ability to serve as a juror would not be affected by her treatment at the Central Florida Pulmonary Group. The court also noted that Murphy had not moved for a mistrial.
The standard of review of a trial court's application of the De La Rosa test is abuse of discretion. See Garnett v. McClellan, 767 So.2d 1229, 1231 (Fla. 5th DCA 2000). Whether the concealed information is material involves consideration of many factors, and the determination of materiality should primarily be made at the trial level where "the dynamics and context of the entire trial process can best be evaluated." Roberts v. Tejada, 814 So.2d 334, 345 (Fla.2002). In the instant case, we find no abuse of discretion.
In Roberts, which involved jurors who failed to disclose their experience with *1161 lawsuits, the court held that there is no per se rule that involvement in any particular prior legal matter is or is not material. Id. at 345. The materiality determination, for which there is no bright-line test, must be based on the facts and circumstances of each case. Id. at 341 (quoting Garnett, 767 So.2d at 1230-31). Nondisclosure is considered material if it is substantial and important so that if the facts were known, the defense may have been influenced to peremptorily challenge the juror. Id. (quoting Garnett, 767 So.2d at 1230-31). Remoteness in time is one aspect to consider in determining the impact, if any, of a juror's prior exposure to the legal system on his present ability to serve in a particular case. Id. at 342. Other factors may include the character and extensiveness of the litigation experience, and the juror's posture in the litigation. Id.
Cases in which the nondisclosure was deemed material include:

De La Rosa (plaintiff entitled to a new trial where juror failed to disclose that he was a defendant in at least six lawsuits; juror may sympathize with defendants or develop a bias against legal proceedings in general and the omitted information prevented counsel from making an informed judgment which in all likelihood would have resulted in a peremptory challenge); Bernal v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991) (plaintiff entitled to a new trial where juror failed to disclose that he had been a defendant in a personal injury case one year previously); Industrial Fire & Cas. Ins. Co. v. Wilson, 537 So.2d 1100 (Fla. 3d DCA 1989) (defendant and his insurance company were entitled to a new trial where juror failed to disclose that he had been insured by the company and that the company had denied his claim for benefits); Mobil Chemical Co. v. Hawkins, 440 So.2d 378 (Fla. 1st DCA 1983), rev. denied, 449 So.2d 264 (Fla.1984) (defendant was entitled to a new trial where juror concealed fact that she was related to plaintiff's family and had been represented by an attorney who had an interest in the case).
Id. at 341-42 (quoting Garnett, 767 So.2d at 1230-31).
Other cases include Kelly v. Community Hospital of Palm Beaches, 818 So.2d 469 (Fla.2002) (in a fraud case resulting in a verdict for the defendants, one juror, who said he was a retired lawyer when in fact he had been suspended by the Florida Supreme Court and disbarred by the United States Supreme Court, did not disclose that he had been involved as a defendant in a number of cases involving fraud, and another juror was the petitioner in a recently-filed divorce case and alleged that her husband had significant undeclared income); Davis v. Cohen, 816 So.2d 671 (Fla. 3d DCA 2002) (juror in automobile negligence case resulting in a verdict for the plaintiff failed to reveal that nine years earlier he was the plaintiff in an automobile negligence case); Am. Med. Sys., Inc. v. Hoeffer, 723 So.2d 852 (Fla. 3d DCA 1998) (juror failed to reveal judgment against her for $45,000 in debt-collection action); Young v. State, 720 So.2d 1101 (Fla. 1st DCA 1998) (remanded for further jury interviews where juror in criminal sexual abuse case did not reveal she may have been victim of sexual abuse); Castenholz v. Bergmann, 696 So.2d 954 (Fla. 4th DCA 1997) (juror failed to reveal five distinct actions against her); Wilcox v. Dulcom, 690 So.2d 1365 (Fla. 3d DCA 1997) (juror in auto negligence case disclosed that she had settled an auto negligence claim but did not reveal that she had been involved in a collections dispute and had been a party in a domestic action).
*1162 Cases in which the non-disclosure was deemed immaterial include: Leavitt v. Krogen, 752 So.2d 730 (Fla. 3d DCA 2000) (although the juror admitted during the post-trial interview that she had seen the debt-collection complaint filed ten years earlier on her behalf, she did not know if it had been filed, and did not think the questions posed by counsel and the court applied to her; further, the party seeking a new trial was the plaintiff, and collections actions are usually favorable to the plaintiff); Garnett, 767 So.2d at 1229 (order of new trial reversed in automobile negligence case resulting in verdict for plaintiff where juror did not reveal that she had been at fault in an automobile accident involving only property damage because any juror bias would have been in favor of defendant, where defendant did not strike another juror who had been in an accident, and where defendant struck only jurors who were still suffering from injuries sustained in accidents); James v. State, 751 So.2d 682, 684 (Fla. 5th DCA 2000) ("based on defense counsel's lack of interest in whether prospective jurors had relatives who had been convicted of crimes, [juror's] failure to disclose that information was not material"). In the instant case, it is not clear whether Juror Moore had asthma or bronchitis, or both, and it is not clear whether she was treated by Dr. Decker or Dr. "Arado (ph)" or Dr. Aldarondo, and this lack of information must be attributed to Murphy, the complaining party, who, if she had questioned Juror Moore during her mid-trial examination could have clarified these questions. Compare, State Farm Fire and Cas. Co. v. Levine, 875 So.2d 663 (Fla. 3d DCA 2004) (party seeking a new trial on the basis of juror nondisclosure failed to interview juror, thus leaving many questions unanswered, and failed to establish materiality).
Nothing in the abbreviated questioning of Juror Moore suggests that she would be biased one way or the other because of any experience she may have had with asthma or with the medical group. The three non-exclusive factors identified in Roberts are the remoteness of the experience, the juror's status in the prior case, (indicating where the juror's sympathies might lie), and the character and extensiveness of the prior litigation. Here, Juror Moore had a one-time treatment or consultation that was so long ago and/or insignificant to her that she did not remember it. Murphy has failed to establish that Juror Moore's brief encounter with the medical group would cause Juror Moore to lean in favor of the medical groups or the doctors that were defendants. Further, we have studied the record and see nothing in the pattern of peremptory challenges to suggest that Murphy would have stricken Juror Moore if the information had been disclosed during voir dire.
Nor is the information material merely because for some reason Murphy objected to Moore's presence on the jury. Murphy argues that materiality is demonstrated by the fact that she tried to strike Juror Moore after the mid-trial examination, which, she is correct to say, distinguishes this case from others, where the losing parties conducted post-trial public records searches probably with the express purpose of finding discrepancies between the records and what the jurors said during voir dire. Materiality is only shown "where the omission of the information prevented counsel from making an informed judgment  which in all likelihood would have resulted in a peremptory challenge." Roberts, 814 So.2d at 340. Nondisclosure is considered material if it is substantial and important so that if the facts were known, the defense may have been influenced to peremptorily challenge the juror from the jury. Id. at 341. Materiality must be based on the facts and *1163 circumstances of the case, Roberts, 814 So.2d at 342, not on the client's analysis. See also Levine (affirming denial of new trial where trial attorney submitted affidavit stating that he would have peremptorily challenged juror if information had been disclosed during voir dire). In the instant case, given the remoteness of Juror Moore's connection with the medical group, the lack of information regarding by whom she was treated and for what, and Murphy's counsel's lack of interest in her, see James, 751 So.2d at 682, it cannot be said that the trial court abused its discretion in ruling that the undisclosed information was not material.
AFFIRMED.
GRIFFIN, J., and PARSONS, W., ASSOCIATE JUDGE, concur.
NOTES
[1] Central Florida Pulmonary states in its brief that Moore may have meant, or said, Dr. Aldarondo, who, unlike Dr. Decker, was not introduced to the jury.